

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

*Question IV Page 1*
*Mr Zuleddily O-6128*

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

<div style="margin-left:40%;">

Opinion No. O-3817
Re: Construction of gas production
tax as applied to:
(a) Distinction between oil well
and gas well
(b) Where gas is sold or donated
to city
(c) Contract between producer and
operator of recycling plant.

</div>

We have given careful consideration to the questions submitted in your letter of July 15th, which we shall take up in the order submitted. In accordance with your letter of October 21st, we are omitting your third question.

### Question I

"A well which produces crude oil, but produces with said oil gas in excess of 100,000 cu. ft. per barrel of oil, is called a 'statutory' gas well. (See definition in Article 6008, Section 2(d) Subsection (b). Is gas from such a well to be considered as 'natural gas' or 'casing-head gas' under the definitions 6-8 of Section 2 of Article II, House Bill No. 8 of the Forty-seventh Legislature, and is such gas taxable at the minimum as set out for natural gas in paragraph 3 of Section 1, Article II, House Bill No. 8?"

Article 6008, Section 2(d), Vernon's Annotated Civil Statutes, defines a "gas well" as follows:

"The term 'gas well' is any well (a) which produces natural gas not associated or blended with crude petroleum oil at the time of production, or (b) which produces more than one hundred thousand (100,000) cubic feet of natural gas to each barrel of crude petroleum oil from the same producing horizon, or (c) which produces natural gas from

a formation or producing horizon productive of gas only
encountered in a well bore through which crude petroleum
oil also is produced through the inside of another string
of casing."

Paragraph (e) of said Article 6008, Section 2,
defines an oil well as follows:

"The term 'oil well' is any well which produces
one (1) barrel or more of crude petroleum oil to each
one hundred thousand (100,000) cubic feet of natural gas."

In opinion No. 0-1760, addressed to Mr. John E.
Taylor, Chief Supervisor, Oil and Gas Division, Railroad
Commission of Texas, we construed the above provisions of
Article 6008 and held that:

". . . since the well produces oil at a higher
oil-gas ratio than 100,000 cubic feet of gas per barrel
of crude petroleum oil, the well would be a gas well and
not an oil well, and the gas produced from such well would
not be 'casinghead gas'."

It is our opinion that a well which produces crude
oil with gas in excess of 100,000 cubic feet per barrel of oil
is a "gas well" within the meaning of the definition contained
in Article 6008, and such gas is taxable at the minimum of
11/150 of 1 cent per M.C.F. provided in Article II of H. B.
No. 8, should its market value not amount to as much as 1.41¢
per M.C.F.

## Question II

"One well produces oil and gas from one formation,
gas only from another formation. The products emerge
from the well; one through the tubing, the other through
the space between the tubing and casing through a braden-
head at the well head. They are produced from separately
sealed-off formations and are metered separately. Article
6008, Section 4(a), states that such an operation shall be
regarded as two separate wells. Article 6008, Section 3,
(1) prohibits the production of natural gas from an oil
well unless such gas is produced in a separate string of
casing. Is gas from the gas formation considered 'natural
gas' under Article II of House Bill No. 8, and therefore
subject to the minimum tax rate?"

The term 'casinghead gas' is defined by subsection (1) of section 2, Article 6008, and also by subsection (8) of section 2, Article II of House Bill 8, 47th Leg., to mean "any gas and/or vapor indigenous to an oil stratum and produced from such stratum with oil." In the situation presented in this question the gas produced is not "indigenous to an oil stratum", wherefore we are of the opinion that the gas is not casinghead gas within the meaning of the above statutory definition and consequently is subject to the minimum tax as provided by H. B. No. 8. This gas is being produced in the manner described in subsection (c) of Section 2(d) of Article 6008, supra, and defined as a "gas well".

## QUESTION IV

"Where gas is sold or donated by a producer to a municipality; for example, the City of McAllen. Does the tax accrue thereon under the law as passed in 1936; under Article 2 of House Bill No. 8?"

We shall assume that the gas referred to in this question is gas produced from a gas well, and not casinghead gas.

Prior to May 1, 1941, the tax on gas was payable under Acts, 1936, 44th Leg., 3rd C.S., p. 2040, Ch. 495, Art. 4, Sec. 8; appearing as Article 7047b, Vernon's Annotated Civil Statutes, the pertinent provisions of which read:

"Sec. 1(a) That from and after the date herein fixed, every person engaging or continuing within this State in the business of producing and saving in paying quantities, for sale or for profit, any natural gas, including casinghead gas, from the soil or waters of this State. . ."(Emphasis ours)

"Sec. 3. A tax shall be paid by each such producer on the amount of gas produced and saved within this State . . .

"A tax equivalent to three per cent (3%) of the market value of the total amount of gas produced and saved within this State, or sold, . . .

"The tax hereby levied shall be a liability of the producer of gas. . ."

From the foregoing provisions it appears that prior to May 1, 1941, no tax was payable on gas, which was given away or donated by the producer, since the tax was limited to "the business of producing. . . for sale or for profit, any natural gas". We believe, therefore, that no tax was payable prior to May 1, 1941, on gas produced and donated to the city of McAllen. On gas sold, the producer was liable for a tax of 3%, unless the fact that it was sold to a municipality should exempt the producer. This question will be hereinafter discussed.

Since May 1, 1941, gas has been taxable as produced, under House Bill No. 8, Acts, Regular Session, 47th Legislature, upon the various formulae discussed in our opinion No. O-3516.

We come now to the question of whether a producer of gas is exempt from the payment of "an occupation tax on the business or occupation of producing gas" by virtue of the fact that such gas may be sold or donated to a municipality.

A similar question was before the Supreme Court of Texas in State of Texas v. City of El Paso, 135 Tex. 359, 143 S.W. (2d) 366, wherein the court held that the city of El Paso was liable for the tax of 4¢ per gallon on gasoline which it bought in the State of New Mexico and used in the operation of its police cars, etc., in the city limits, in spite of Article VIII, Section 1, of the Texas Constitution, which reads in part:

". . . It (the Legislature) may also impose occupation taxes, both upon natural persons and upon corporations, other than municipal." (Emphasis ours)

Mr. Justice Critz, in discussing the application of the tax to a dealer in Texas who sells gasoline to a city, stated at page 369:

"We now come to determine whether or not a dealer who sells motor fuel to a city for municipal use by such city on the public highways of the State is exempt from the four cents per gallon motor fule tax levied by our motor fuel tax laws. Again referring to the above quoted statutes, we find that they contain no direct provision

making such exemption. Also, we find that such statutes contain no language which would justify us in construing them as intending such an exemption. It follows that dealers who sell motor fuels to cities in this State for use on public highways are liable to pay the statutory four cents per gallon motor fuel tax levied by our motor fuel tax laws." (Emphasis ours)

In Grayburg Oil Co. v. State, 3 S.W. (2d) 427, the Texas Commission of Appeals held that the State could collect the 1¢ per gallon tax on gasoline (declared to be an occupational excise tax) sold by a dealer to the United States Government. The court declared:

"That a state may thus measure an occupation tax, even when interstate transactions are taken into account, has full recognition in G.H.&S.A. Ry. Co. v. Texas, 210 U.S. 217. . . .

"In respect to that gasoline whose quantity made up one of the factors for calculation of the amount of the tax, Grayburg Oil Company was seller and the United States was purchaser. The seller (a Texas Corporation) had no relation with the federal government save that created in the agreement for the sales mentioned. It 'lives and moves and has its being' beyond the field occupied by federal agencies such as appeared in McCulloch v. Maryland. . ."

This decision by the Texas Commission of Appeals was reversed on appeal to the United States Supreme Court in 1929, 278 U. S. 582, by a memorandum opinion declaring the reversal to be on the authority of Panhandle Oil Co. v. Knox, 277 U. S. 218. On November 10, 1941, the United States Supreme Court expressly overruled Panhandle Oil Co. v. Knox in the unanimous opinion written by Chief Justice Stone in Alabama v. King and Booser, not yet reported. The authority of the decision of the Texas Commission of Appeals in Grayburg Oil Co. v. State would therefore appear to have been revived.

In Alabama v. King & Booser, supra, the United States Supreme Court, in holding that a contractor who was building a federal project on a "cost plus" contract was not exempt from the payment of a 2% state sales tax on lumber, declared:

a-387

"So far as such a nondiscriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident to the organization within the same territory of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity."

Since the gas production tax, both before and since May 1, 1941, is a tax on the occupation of the producer, measured by the volume of gas which he produces, we believe that he may not claim immunity therefrom by reason of the fact that he sells or donates all or any part of the gas to a municipality. Whether he sells or donates the gas to a city, the tax is payable upon the same basis as though he sold or donated it to a private person or corporation.

## QUESTION V.

"Where a recycling plant has contracts to give fifty per cent of the products extracted to the producers in payment for gas, does the tax upon the entire sixty per cent of the gross value of all products extracted become the producers liability? Should the producer pay one-half of the tax and the plant pay one-half?"

Where gas is processed by a recycling plant the tax is payable under that part of the act designated as Rule 5 in our Opinion No. O-3516, which reads:

". . . Where gas is processed for its liquid hydrocarbon content and the residue gas is returned by recycling methods to the same gas-producing formation underlying the land from which the gas is produced, the taxable value of such gas shall be three fifths (3/5) of the gross value of all products extracted, separated and saved from such gas."

This provision of the statute fixes the method of determining the market value of the gas as produced, irrespective of the contract between the producer and the operator of the recycling plant. For tax purposes, the value of the gas has been declared by the Legislature to be "three fifths (3/5) of the gross value of all products extracted." In effect, this amounts to a legislative declaration, that for tax purposes, the reasonable cost of conducting the recycling operations shall be presumed to be equal to the gross value of two-fifths (2/5) of the products extracted.

In our opinion No. O-3516, in answer to question 11 therein, we stated that that proportion of the gas as produced, the residue of which is used for fuel in the operation of the recycling plant should be taxed under rule 4 (Proviso When Consideration is part of Extracted Products, if Gas is not Processed by a Recycling Operation) rather than under rule 5 (Proviso When Gas is Processed for Liquid Hydrocarbons and Residue Returned by Recycling Methods). After careful consideration we have reached the conclusion that we were in error in so holding. The use of a small part of the residue gas for fuel in the operation of the recycling plant is, we are advised, a universal practice and the use of such fuel constitutes an essential and integral part of the recycling operation. We therefore amend our answer to question 11 of opinion No. O-3615 to the effect that where all of the residue gas, after the extraction of liquid hydrocarbons, except such as is necessarily used for fuel in the recycling process, is returned to the producing formation, all of the gas as produced is to be taxed under rule 5, i. e., on the basis of the value of three-fifths (3/5) of the gross value of all products extracted.

As heretofore stated, this is "an occupation tax on the business or occupation of producing gas", levied against "the producer or other interest holders", and in the situation presented in this question is measured by three-fifths (3/5) of the gross value of all products extracted in the course of the recycling process, none of which tax is levied against the operator of the recycling plant.

Overruled O-6128

### QUESTION VI

"Where a recycling plant has contracts with producers to pay for the gas by the latter receiving fifty per cent of the products extracted, then in the same contract the plant agrees to purchase the producers' fifty per cent of the products, based on the following prices:

"Distillate-price per barrel of Refugio crude oil per daily quotation;
"Butane-1¼¢ per gallon;

"The plant then sells these products, together with their own fifty per cent of the products, at approximately 50¢ profit per barrel over the price of Rufugio crude. Does the tax accrue on the value of the products as used in payment to the gas producer or on the gross value of the products as sold?"

Honorable Geo. H. Sheppard, page 8

As stated in answer to Question V, supra, where the gas is processed by a recycling operation, the producer's occupation tax is measured by three-fifths (3/5) of the gross value of all products extracted, ~~irrespective of the terms of the contract between the producer and the recycling plant operator.~~ Consequently, the actual price received for the sale of such products (assuming it to be a bona fide sale made "at arm's length") will determine the "gross value" upon which the tax is to be based, rather than any arbitrary measure of value which may be provided for in the contract between the producer and the operator of the recycling plant.

Yours very truly

ATTORNEY GENERAL OF TEXAS

BY /s/ Walter R. Koch
       Assistant

Approved Dec. 3, 1941
Grover Sellers
First Assistant
Attorney General

WRK:AMM:djm ;ms

Approved: Opinion Committee
By R B
  Chairman